# In the United States Court of Federal Claims

No. 15-843L
(Filed: June 27, 2018)

*****************************************

| | | |
|---|---|---|
| ALEX BROOKS, JR. et al., | * | |
| | * | |
| Plaintiffs, | * | Rails-to-Trails; Fifth Amendment Taking; |
| | * | Threshold Title Issues; Centerline |
| v. | * | Presumption Under North Carolina Law; |
| | * | Intervening Public Road |
| THE UNITED STATES, | * | |
| | * | |
| Defendant. | * | |

*****************************************

Mark F. Hearne, II, Clayton, MO, for plaintiffs.

Mayte Santacruz, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

**SWEENEY**, Judge

In this Rails-to-Trails case, plaintiffs own real property purportedly adjacent to a railroad right-of-way in Cleveland County, North Carolina. They contend that the United States violated the Just Compensation Clause of the Fifth Amendment to the United States Constitution by authorizing the conversion of the railroad right-of-way into a recreational trail pursuant to the National Trail Systems Act ("Trails Act"), thus acquiring their property by inverse condemnation. Both plaintiffs and defendant move for summary judgment on threshold title issues. For the reasons set forth below, the court grants in part and denies in part the parties' motions.

## I. BACKGROUND

### A. Statutory and Regulatory Context

During the last century, the United States began to experience a sharp reduction in rail trackage. Preseault v. Interstate Commerce Comm'n, 494 U.S. 1, 5 (1990). To remedy this problem, Congress enacted a number of statutes, including the Trails Act, 16 U.S.C. §§ 1241-1251 (2012). The Trails Act, as amended, provides for the preservation of "established railroad rights-of-way for future reactivation of rail service" by authorizing the interim use of such rights-of-way as recreational and historical trails. Id. § 1247(d). This process is referred to as "railbanking," and is overseen by the Surface Transportation Board ("Board"), id., the federal agency with the exclusive jurisdiction to regulate "the construction, acquisition, operation,

abandonment, or discontinuance" of most railroad lines in the United States, 49 U.S.C. § 10501(b) (2012).

Before railbanking can occur, the railroad company must seek to abandon its line, either by initiating abandonment proceedings with the Board pursuant to 49 U.S.C. § 10903, or by requesting that the Board exempt it from such proceedings pursuant to 49 U.S.C. § 10502. While considering the railroad company's abandonment application or exemption request, the Board will entertain protests and comments from interested third parties. 49 C.F.R. §§ 1152.25, 1152.29(a) (2014). Of particular relevance in this case, interested third parties may submit requests for the interim use of the railroad line as a trail pursuant to 16 U.S.C. § 1247(d). Id.

If an interested third party submits a trail-use request to the Board that satisfies the requirements of 16 U.S.C. § 1247(d), the Board makes the necessary findings pursuant to 49 U.S.C. § 10502(a) or 49 U.S.C. § 10903(d), and the railroad company agrees to negotiate a trail-use agreement, the Board will issue one of two documents: if the railroad company initiated abandonment proceedings, the Board will issue a Certificate of Interim Trail Use or Abandonment, and if the railroad company sought an exemption, the Board will issue a Notice of Interim Trail Use or Abandonment ("NITU"). 49 C.F.R. § 1152.29(b)-(d). The effect of both documents is the same: to "permit the railroad to discontinue service, cancel any applicable tariffs, and salvage track and materials, consistent with interim trail use and rail banking . . . ; and permit the railroad to fully abandon the line if no agreement is reached 180 days after it is issued, subject to appropriate conditions . . . ." Id. § 1152.29(d)(1); accord id. § 1152.29(c)(1). The Board will entertain requests to extend the 180-day deadline to enable further negotiations. If the railroad company and the interested third party execute a trail-use agreement, then abandonment of the railroad line is stayed for the duration of the agreement. Id. § 1152.29(c)-(d); 16 U.S.C. § 1247(d). If no trail-use agreement is executed, the railroad company is permitted to fully abandon the line. 49 C.F.R. § 1152.29(c)-(d). To exercise its abandonment authority, the railroad company must "file a notice of consummation with the Board to signify that it has . . . fully abandoned the line" within one year of "the service date of the decision permitting the abandonment . . . ." Id. § 1152.29(e)(2). In the absence of a timely filed notice of consummation, the railroad company's authority to abandon the line automatically expires. Id.

If efforts to execute a trail-use agreement are unsuccessful and the railroad company notifies the Board that it has fully abandoned the line, the Board is divested of jurisdiction over the abandoned railroad line and "state law reversionary property interests, if any, take effect." Caldwell v. United States, 391 F.3d 1226, 1228-29 (Fed. Cir. 2004).

## B.  Relevant Factual History

Plaintiffs own real property in Cleveland County, North Carolina, purportedly adjacent to an 11.85-mile portion of a railroad right-of-way situated between (1) milepost SB 144.55 and milepost SB 154.50, and (2) milepost SB 158.10 and milepost SB 160.00.[1]  The right-of-way was acquired between 1886 and 1889 by a predecessor of the railroad line's current owner,

---

[1]  The court derives the facts in this section, which are undisputed, from the exhibits attached to the parties' summary judgment motions.

Norfolk Southern Railway Company ("Norfolk Southern"). On June 16, 2015, Norfolk Southern submitted to the Board a notice of exemption to abandon the 11.85-mile right-of-way. Two days later, the City of Shelby, North Carolina submitted a trail-use request to the Board. Norfolk Southern agreed to negotiate a trail-use agreement with the City, and on August 4, 2015, the Board issued a NITU. The City and Norfolk Southern have been granted several extensions of time to negotiate a trail-use agreement and negotiations remain ongoing.

### C. Procedural History

Three days after the Board issued the NITU, four individuals filed suit in this court alleging that through the operation of the Trails Act, defendant had taken their property without paying just compensation in violation of the Fifth Amendment. Additional plaintiffs joined the action, culminating in the filing of a third amended complaint on July 28, 2017, that set forth the claims of 105 property owners.[2] The claims of three of those property owners were subsequently dismissed from the case,[3] leaving the claims of 102 property owners for adjudication.

In accordance with a schedule proposed by the parties, plaintiffs provided defendant with a book describing their claims. The parties subsequently filed four sets of stipulations regarding title matters:

- June 9, 2017: The parties stipulated that (1) certain identified plaintiffs owned their properties on August 4, 2015, the date the Board issued the NITU, and (2) certain identified parcels were adjacent to the railroad right-of-way described in the NITU.

- August 11, 2017: The parties stipulated that (1) additional identified plaintiffs owned their properties on August 4, 2015, the date the Board issued the NITU, and (2) certain identified original conveyances corresponded with certain identified parcels and with the relevant segment of the original railroad right-of-way.

- August 18, 2017: The parties stipulated that certain identified original conveyances corresponded with other identified parcels and with the relevant segment of the original railroad right-of-way.

- August 29, 2017: The parties stipulated that under North Carolina law and for certain identified parcels, the identified source deeds conveyed an easement

---

[2] For the purposes of this decision, the term "property owner" includes individuals, groups of individuals, and entities.

[3] The claim of Charles L. and Barbara S. Rogers (claim 18) was dismissed without prejudice on September 6, 2017, and the claims of (1) Annie W. and Jimmy D. Dixon (claims 31a and 31b) and (2) Linda C. Price (claims 37a, 37b, 37c, and 37d) were dismissed without prejudice on January 16, 2018.

for railroad purposes over the corresponding segment of the original railroad right-of-way.

The parties reserved the right to modify or revoke a stipulation if they later determined that the stipulation was legally or factually erroneous.

After filing their fourth set of stipulations, the parties suggested, and the court adopted, a schedule for briefing cross-motions for summary judgment on threshold title issues.  Plaintiffs filed their motion for partial summary judgment ("motion") on August 31, 2017, seeking judgment in their favor with respect to the claims of all but six of the property owners identified in their third amended complaint.[4]  Defendant filed its response and cross-motion for partial summary judgment ("cross-motion") on October 10, 2017, arguing that plaintiffs were entitled to summary judgment on threshold title issues only for fifty identified claims.  According to defendant, it was entitled to summary judgment with respect to (1) twelve claims of ten property owners due to their failure to establish that they owned their properties on August 4, 2015, the date the NITU issued, and (2) at least eighty-nine claims because the owners of the associated parcels had not established a property interest in the land underlying the railroad right-of-way.

Thereafter, plaintiffs sought a stay of the resolution of the claims contested by defendant through January 31, 2018, to enable them to conduct additional title research.  Over defendant's objection, the court granted plaintiffs' request.[5]  Thus, plaintiffs filed their reply in support of their motion and response to defendant's cross-motion ("reply and response") on January 31, 2018.  Defendant filed its reply in support of its cross-motion ("reply") on March 7, 2018.  In its reply, defendant indicates that it now agrees that plaintiffs are entitled to summary judgment on threshold title issues for sixty-three identified claims, but contends that it is entitled to summary judgment with respect to (1) four claims of three property owners due to their failure to establish that they owned their properties on August 4, 2015, the date the NITU issued, and (2) at least sixty-eight claims because the owners of the associated parcels have not established a property interest in the land underlying the railroad right-of-way.

Briefing is now complete and the court deems oral argument unnecessary.

## II.  DISCUSSION

Both plaintiffs and defendant move for summary judgment on threshold title issues pursuant to Rule 56 of the Rules of the United States Court of Federal Claims ("RCFC").

---

[4]  Specifically, plaintiffs did not seek summary judgment with respect to the claims of (1) C.C. Dickson Co. (claim 24); (2) Hil-Cri-Mor Hudson Rentals (claim 19); (3) Sheila P. and Les Ivie (claim 51); (4) James D. Ledbetter (claim 17b); (5) Charles L. and Barbara S. Rogers (claim 18); or (6) Tommy A. Swan and Anita P. Long on Behalf of the Estate of Phyllis B. Patterson (claims 56a, 56b, and 56c).  As noted above, the claim of Charles L. and Barbara S. Rogers was subsequently dismissed without prejudice on September 6, 2017.

[5]  The court later denied plaintiffs' request to extend this deadline by an additional thirty days.

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law.  RCFC 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue is genuine if it "may reasonably be resolved in favor of either party."  Id. at 250.

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Celotex Corp., 477 U.S. at 323.  The nonmoving party then bears the burden of showing that there are genuine issues of material fact for trial.  Id. at 324.  Both parties may carry their burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  RCFC 56(c)(1).

The court must view the inferences to be drawn from the underlying facts in the light most favorable to the nonmoving party.  Matsushita Elec. Ind. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  However, the court must not weigh the evidence or make findings of fact.  See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."); Contessa Food Prods., Inc. v. Conagra, Inc., 282 F.3d 1370, 1376 (Fed. Cir. 2002) ("On summary judgment, the question is not the 'weight' of the evidence, but instead the presence of a genuine issue of material fact . . . ."), abrogated on other grounds by Egyptian Goddess, Inc. v. Swish, Inc., 543 F.3d 665 (Fed. Cir. 2008) (en banc); Ford Motor Co. v. United States, 157 F.3d 849, 854 (Fed. Cir. 1998) ("Due to the nature of the proceeding, courts do not make findings of fact on summary judgment."); Mansfield v. United States, 71 Fed. Cl. 687, 693 (2006) ("[T]he Court may neither make credibility determinations nor weigh the evidence and seek to determine the truth of the matter.  Further, summary judgment is inappropriate if the factual record is insufficient to allow the Court to determine the salient legal issues.").  Entry of summary judgment is mandated against a party who fails to establish "an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  However, if neither party satisfies this burden on the filing of cross-motions for summary judgment, then the court must deny both motions.  See First Commerce Corp. v. United States, 335 F.3d 1373, 1379 (Fed. Cir. 2003) ("When both parties move for summary judgment, the court must evaluate each motion on its own merits, resolving reasonable inferences against the party whose motion is under consideration."); Bubble Room, Inc. v. United States, 159 F.3d 553, 561 (Fed. Cir. 1998) ("The fact that both the parties have moved for summary judgment does not mean that the court must grant summary judgment to one party or the other.").

The issues raised in the parties' summary judgment motions are threshold title issues, namely, whether (1) the properties owned by plaintiffs correspond with properties that were originally conveyed to create the railroad right-of-way described in the NITU; (2) the original conveyances were easements for railroad purposes; (3) the properties owned by plaintiffs are immediately adjacent to the railroad right-of-way described in the NITU; and (4) plaintiffs

owned their properties on August 4, 2015, the date the Board issued the NITU.  Plaintiffs bear the burden of establishing each of these issues in their favor.  See, e.g., Klamath Irrigation Dist. v. United States, 635 F.3d 505, 520 n.12 (Fed. Cir. 2011) ("It is plaintiffs' burden to establish cognizable property interests for purposes of their takings . . . claims."); Am. Pelagic Fishing Co. v. United States, 379 F.3d 1363, 1372 (Fed. Cir. 2004) ("[A]s a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment.  . . .  If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court[']s task is at an end." (citations omitted)); Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken, even for regulatory takings."); BHL Props., LLC v. United States, 135 Fed. Cl. 222, 229 (2017) ("[I]t is [plaintiffs'] burden to prove [their] ownership of the land abutting the railway corridor; it is not the government's burden to disprove it.").

To facilitate its consideration of the parties' motions, the court divides plaintiffs' claims into the following categories:  (1) claims for which defendant agrees that plaintiffs are entitled to partial summary judgment, (2) claims for which plaintiffs seek partial summary judgment that were not addressed by defendant, (3) claims for which defendant contends that plaintiffs have not established ownership of the associated parcels, (4) claims for which defendant contends that the associated parcels are cut off from the railroad right-of-way by an intervening parcel, (5) claims for which defendant contends that the associated parcels are cut off from the railroad right-of-way by an intervening public road, (6) claims for which defendant contends that plaintiffs have not established a property interest in the land underlying the railroad right-of-way, and (7) claims that are not addressed by either party.  In assessing the parties' arguments regarding the claims in categories three through six (and one claim in the first category), the court primarily (but not exclusively) relies upon the following evidence in the record:

- The deeds reflecting the original conveyance of the right-of-way to Norfolk Southern's predecessor, see Third Am. Compl. Exs. 15-17, 20, 25-27, 29, 31-32, 34, 36, 38-39, 41-44, 48-49, 51-53, 56-57;

- The deeds reflecting conveyances of property to plaintiffs, see Third Am. Compl. Exs. 21, 64, 74, 76, 82, 88, 90, 92, 98, 102, 106, 108, 115, 121, 123, 133, 135, 143, 162, 168, 172, 176, 186, 194, 196, 202, 208, 212, 220, 222, 230, 236, 248, 250, 258, 260, 264, 266; Reply & Resp. Exs. 2-3, 7-8, 16, 26-30, 35, 37;

- A series of maps prepared by the Interstate Commerce Commission in June 1916 that depict the railroad right-of-way and the surrounding properties ("ICC valuation maps"),[6] see Third Am. Compl. Exs. 2-7;

---

[6]  ICC valuation maps "depict the right-of-way acquired for the railroad at the time the railroad was built, and typically provide information on whom the land was acquired from, as well as a description of the land including its dimensions or approximate boundary."  Reply & Resp. Ex. 20 ¶ 5.

- An overview map of the railroad right-of-way prepared by plaintiffs that depicts the location of their properties, see Mot. Ex. 1;

- The WebGIS maps that defendant obtained from the Cleveland County website,[7] see Cross-Mot. Exs. 7-8; and

- A plat of the Meadow Brook subdivision, see, e.g., Reply & Resp. Ex. 54.

The court addresses each category in turn.[8]

## A. Plaintiffs Are Entitled to Summary Judgment on Threshold Title Issues as to the Sixty-Four Claims for Which Defendant Concedes Entitlement

As an initial matter, defendant has identified sixty-four claims for which it concedes that plaintiffs are entitled to summary judgment on the threshold title issues:[9]

| Claim | Property Owner | Parcel Number |
|-------|---------------|---------------|
| 1 | Harry Eugene Washburn, Sr., Gerald Donald Washburn, D.P. Washburn, and Evelyn Washburn Giles | 2518675605 |
| 15a 15b | Don L. Yelton | (a) 2547035597 (b) 2547035304 |
| 25 26 | Rickey Warren and Deborah Bailey Smith | 2546174787 2546175578 |
| 29 | Royster Oil Company, Inc. | 2546174092 |
| 32a | Hoyle Plumbing Company, Inc. | (a) 2546059653 |

---

[7] Defendant submitted a number of WebGIS maps in support of its cross-motion. "GIS" is an acronym for "geographic information systems," which "is a computer-based technology that allows for the collection, storage, display and analysis of geographic data[,] most commonly displayed as a map or an interactive web-based application." Reply & Resp. Ex. 20 ¶ 2.

[8] For each category, the court provides a table that identifies the relevant claims, property owners, and parcel numbers. The names of the property owners are taken directly from the third amended complaint. However, some of the property owners are identified differently in the parties' stipulations, summary judgment motions and briefs, and exhibits, including (but not necessarily limited to) the property owners associated with claims 1, 34a, 34b, 46a, 54, 55, 65, 94, 96, 97, 99, 109, 111, and 117. Before any final judgment is entered for plaintiffs, the parties shall ensure that the proper individuals or entities are identified as the property owners entitled to compensation.

[9] In its reply, defendant provides that its concession applies to sixty-three claims. The difference in number is due to defendant combining claims 122a and 122b into a single claim.

| | | |
|---|---|---|
| 33a | Doris W. Elliott | (a) 2546058598 |
| 33b | | (b) 2546058586 |
| 34a | Doris and James Wilson | (a) 2546058551 |
| 34b | | (b) 2546058425 |
| 35a | Dilipkumar S. Patel | (a) 2546057386 |
| 35b | | (b) 2546057236 |
| 35c | | (c) 2546057240 |
| 36 | Jerry Dean Greene | 2546058392 |
| 38 | Peggy Ellis Porter | 2546046852 |
| 39 | Carol H. Price and James Nathan Price | 2546045275 |
| 40a | New Covenant Baptist Church | (a) 2546034663 |
| 40b | | (b) 2546036249 |
| 42 | Joyce Conner Hamrick | 2546103734 |
| 43a | Harry Quinton and Frances M. Hamrick | (a) 2545190995 |
| 43b | | (b) 2545198687 |
| 44 | Victor M. Haynes and Robert A. Haynes | 2545198615 |
| 45 | Cameron Todd Hamrick | 2545190594 |
| 47 | Kenneth Wayne Allen | 2545380577 |
| 48 | Earnest and Mary Wilson | 2545271944 |
| 49a | John L. and Sharon Yvette A. McGill | (a) 2545277593 |
| 49b | | (b) 2545279221 |
| 52 | J. Daryl Hopper | 2545467174 |
| 53a | Thomas F. Hardin | (a) 2545740965 |
| 53b | | (b) 2545832637 |
| 54 | Jody R. Standridge, Stacey Walk, and Deedra Dimsdale on Behalf of the Estate of William Gerald Standridge | 2545634843 |
| 67 | Arthur Dale Wellmon, Jewel L. Wellmon Oxner, and Anita L. Wellmon Strange | 2544872938 |
| 69 | Bobby and Brenda Walker | 2544788165 |
| 70 | Alex Brooks, Jr. | 2544787044 |
| 72 | Joe Tillman and Madonna Rose Costner | 2544775961 |
| 74 | Richard R. and Susan G. Shook | 2544769539 |
| 75 | The Trustees of Ellis Chapel Baptist Church | 2544760824 |
| 76 | | 2544666504 |
| 77a | Laura Kaye Lowery | (a) 2544674096 |
| 77b | | (b) 2544663913 |
| 78 | David Thomason and Joyce A. Peake | 2544660799 |
| 84 | Randolph S. and Dawn M. Cole | 2544437394 |
| 85 | Johnny M. and Martha Lavender | 2544329889 |
| 86 | Margaret L. Jackson | 2544423458 |
| 88a | Larry E. Lail | (a) 2544411850 |
| 88b | | (b) 2544411743 |
| 88c | | (c) 2544411513 |
| 89c | Jaqueline H. Lavender | (c) 2543373985 |

| 92a<br>92b<br>92c | Trustees of New Hope Church of Earl | (a) 2543371336<br>(b) 2543379389<br>(c) 2543371336 |
|---|---|---|
| 104 | M.T. and Frankie Ramey | 2543344476 |
| 106<br>122a<br>122b | Mary Nancy H. Edwards, Stephen Sarratt, Ronald R. Miller, and Mark L. Miller | 2543336811<br>(a) 2542175398<br>(b) 2542175398 |
| 107 | Michael Shane Owle | 2543332207 |
| 108a<br>108b<br>108c | Thomas B. Austell, Jr., Robert N. Austell, and Hugh F. Austell | (a) 2543323888<br>(b) 2543226282<br>(c) 2543309926 |
| 111 | Robert Nicholas Austell | 2543321072 |
| 118 | Debbie L. Clay and Elizabeth Hamilton | 2542381502 |
| 120 | Henry Lee Jones | 2542370792 |
| 121 | Adam Davis Brookie | 2542278354 |

In other words, defendant agrees that (1) the identified parcels correspond with property that was originally conveyed to create the railroad right-of-way described in the NITU; (2) the original conveyances were easements for railroad purposes; (3) the parcels are immediately adjacent to the railroad right-of-way described in the NITU;[10] and (4) the identified plaintiffs owned their parcels on August 4, 2015, the date the Board issued the NITU.  Accordingly, the court grants summary judgment to plaintiffs as to these threshold title issues for the sixty-four identified claims.

## B.  Plaintiffs Are Entitled to Summary Judgment on Threshold Title Issues as to Claim 80

One claim that should have been included in the first category, but was not, is claim 80:

| Claim | Property Owner | Parcel Number |
|---|---|---|
| 80 | Whaley, LLC | 2544562027 |

Instead, defendant includes claim 80 in the group of claims, discussed below, in which the associated parcels are separated from the railroad right-of-way by a public road.  However, the deed submitted by plaintiffs, when read in conjunction with plaintiffs' overview map, indicates that the southeastern boundary of the parcel at issue is the railroad right-of-way and that there is no intervening parcel or public road.  Accordingly, the court grants summary judgment to plaintiffs as to the threshold title issues for claim 80.

---

[10]  In its cross-motion, defendant asserted that the parcels associated with these sixty-four claims–including the parcel owned by Thomas B. Austell, Jr., Robert N. Austell, and Hugh F. Austell–extend to the centerline of the railroad right-of-way.  However, in its reply, defendant indicates that "Plaintiff Thomas B. Austell, Jr." owns "the underlying interest subject to the entire railroad easement, including both sides of the rail corridor . . . ."  Reply 6.  It is unclear whether the other property owners in this category who own parcels immediately adjacent to the railroad right-of-way own the entire railroad right-of-way rather than just to the centerline.

**C. Plaintiffs Are Entitled to Summary Judgment on Threshold Title Issues as to the Eight Claims Not Addressed by Defendant**

The next category of claims before the court includes the eight claims for which plaintiffs seek partial summary judgment that are not addressed by defendant:[11]

| Claim | Property Owner | Parcel Number |
|-------|----------------|---------------|
| 11 | Margaret E. Causby | 2528029197 |
| 28a | Royster Transport Company, Inc. | (a) 2546174312 |
| 28b | | (b) 2546174200 |
| 46a | Jerry T. Mayo | (a) 2545190384 |

---

[11] In its cross-motion, defendant conceded that plaintiffs were entitled to partial summary judgment with respect to fifty claims, but that plaintiffs did not provide "evidence establishing that the remaining 89 parcels actually extend to the center of the rail corridor." Cross-Mot. 10. The court is uncertain how defendant determined that there were eighty-nine remaining parcels (a term that defendant uses interchangeably with "claims"). Other than the fifty conceded claims, defendant listed nine claims in Table 2, fifty-eight claims in Table 3, one claim in footnote 8 (the remaining claims listed in footnote 8 were also listed in Table 3), nine claims in footnote 9 (the remaining claims listed in footnote 9 were also listed in Table 3), seven claims in footnote 10 (the remaining claims listed in footnote 10 were also listed in Table 3), and one claim in an unlabeled table on page 7 (the remaining claims in that table were also listed in footnote 10). In other words, defendant specifically mentioned only eighty-five contested claims. However, there must have been more than eighty-five remaining claims at the time defendant filed its cross-motion because defendant did not address eight claims for which plaintiffs seek partial summary judgment or, as discussed below, the seven claims for which plaintiffs do not seek partial summary judgment.

In its reply, which was filed after plaintiffs voluntarily dismissed certain claims and provided additional evidence in support of their motion, defendant indicates that there are 135 claims total, concedes that plaintiffs are entitled to partial summary judgment with respect to sixty-three of those claims, and argues that it is entitled to summary judgment with respect to the remaining seventy-two claims. Again, the court is uncertain how defendant calculated these numbers. Other than the sixty-three conceded claims, defendant lists fifty-three claims in Exhibit 2 and seven other unique claims in the reply itself (in footnotes 7, 8, and 10, and on pages 2, 3, and 5). In other words, defendant specifically mentions only sixty contested claims in its reply. It does not identify the other twelve claims that it contests. Nor does it indicate whether these unidentified claims include the seven claims for which plaintiffs have not sought partial summary judgment.

Given this lack of clarity, the court will only assess the parties' entitlement to summary judgment with respect to the claims specifically mentioned in the summary judgment motions and supporting briefs.

| 55 | Jody R. Standridge, Stacey Walk, and Deedra Dimsdale on Behalf of the Estate of William Gerald Standridge | 2545634163 |
|----|------|------|
| 79 | Melissa Austell Bradshaw | 2544565383 |
| 81 | Royster Oil Company, Inc. | 2544550806 |
| 90 | David A. McSwain | 2543384232 |

The parties stipulated that (1) the identified parcels correspond with property that was originally conveyed to create the railroad right-of-way described in the NITU; (2) the original conveyances were easements for railroad purposes; (3) the parcels are immediately adjacent to the railroad right-of-way described in the NITU;[12] and (4) the identified plaintiffs owned their parcels on August 4, 2015, the date the Board issued the NITU.  Thus, in the absence of any modification or revocation of those stipulations by defendant, the court grants summary judgment to plaintiffs as to these threshold title issues for the eight identified claims.

### D.  Summary Judgment Is Appropriate on the Issue of Ownership With Respect to Claims 16, 89a, and 89b, but Not to Claim 65

With respect to the third category of claims, defendant contends that plaintiffs have not satisfied their burden of establishing that the identified property owners actually owned the relevant parcels.  The four claims in this category are:

| Claim | Property Owner | Parcel Number |
|-------|----------------|---------------|
| 16 | Cleveland Lumber Company, Inc. | 2547121328 |
| 65[13] | Penny Denise Canipe, Susan Borders Lail, and Michael Gene Borders | 2544883340 |

---

[12]  In their reply and response, plaintiffs contend that the "[c]enterline presumption applies" to these eight claims.  Reply & Resp. 12; see N.C. Gen. Stat. § 1-44.2(a) (2014) ("Whenever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement."); McDonald's Corp. v. Dwyer, 450 S.E.2d 888, 890-91 (N.C. 1994) ("The general rule is 'that a call for a monument as a boundary line in a deed will convey the title of the land to the center of the monument if it has width.'  Subsection (a) of [N.C. Gen. Stat. § 1-44.2] is consistent with this common law presumption insofar as it applies to abandoned railroad easements." (citation omitted) (quoting Goss v. Stidhams, 315 S.E.2d 777, 778 (N.C. App. 1984))).

[13]  As discussed below, defendant also contends that claim 65 is cut off from the railroad right-of-way by an intervening public road.

| 89a 89b[14] | Jaqueline H. Lavender | (a) 2543481298 (b) 2543481060 |
|---|---|---|

Specifically, in its cross-motion, defendant identified apparent deficiencies in the materials produced by plaintiffs to support their allegation of ownership.  In response, plaintiffs submitted additional documents to establish that the property owners actually owned the parcels at issue.  Defendant, however, contends in its reply that these additional documents also fail to support plaintiffs' allegation of ownership.

### 1.  Claim 16

First, with respect to claim 16, defendant contended in its cross-motion that the legal description in the deed produced by plaintiffs "does not match the tract dimensions delineated in the county records."  Cross-Mot. 7.  With their reply and response, plaintiffs submitted four deeds that they contend "convey portions of this property to the owner."  Reply & Resp. 9.  In its reply, defendant argues that "none of the deeds produced by [plaintiffs] match[es] the tract dimensions delineated by the county records, which describe this property as a 15.73-acre parcel," and that the five deeds produced by plaintiffs "cover, at most, about 4 acres of the 15.7 acres allegedly owned by [Cleveland Lumber Company, Inc.]"  Reply 3.  In fact, defendant argues (albeit incorrectly),[15] "none of the five deeds describe[s] the portion alongside the subject rail corridor; instead, [each] describe[s] the property on the side abutting S. Morgan Street, which is located on the opposite of the rail corridor."  Id.

The deeds submitted by plaintiffs describe the dimensions of the parcels as follows:

- The Vinson deed:  A 72-by-200-foot parcel, the eastern boundary of which runs along North Morgan Street for 72 feet;

- The McCurry deed:  Two parcels (one that is 54 by 100 feet, and another that is 24 by 100 feet) that are situated 276 feet to the west of North Morgan Street, and a third parcel (150 by 63 feet) that does not appear to adjoin North Morgan Street;

---

[14]  As discussed below, defendant also contends that claims 89a and 89b are cut off from the railroad right-of-way by an intervening public road.

[15]  One of the deeds–the Dellinger deed–describes land abutting the railroad right-of-way:

That lot in the Northwest square of the City of Shelby, N.C., on the West side of North Morgan Street, BEGINNING at a stake Morgan Street, Mrs. Tom Babington's corner; thence North 2 3/4 East 112 feet to a stake; thence North 87 1/4 West 573 feet to a stake on bank of railroad cut; thence with railroad South 24 East 125 feet to a stake; thence with Mrs. Babington's line South 87 1/4 East 513 feet to the BEGINNING, containing 1 9/20 acres more or less . . . .

Reply & Resp. Ex. 3 at 29 (emphasis added).

- The Roberts deed:  A 72-by-87-foot parcel, the eastern boundary of which runs along North Morgan Street for 72 feet;

- The Dellinger deed:  A 112-by-573-by-125-by-513-foot parcel, the eastern boundary of which may run along North Morgan Street for 112 feet, and the western boundary of which runs along the railroad right-of-way for 125 feet; and

- The Martin deed:  A 100-by-414-foot parcel, the eastern boundary of which runs along North Morgan Street for 100 feet.

The only map in the record that depicts the location of these parcels is plaintiffs' overview map, which suggests that the western boundary of the property constituting claim 16 is the railroad right-of-way, and that only a part of the property extends as far as North Morgan Street to the east.  However, it is not possible to match up the deeds, which mostly describe the boundaries of the parcels in relation to the surrounding properties (identified with the owners' names), with the property depicted on the map, for two reasons in particular:  (1) the deeds describe a boundary that runs along North Morgan Street for, at most, 356 feet, while the map reflects that the property runs along North Morgan Street for just under 1000 feet; and (2) the map reflects that the western boundary of the property runs along the railroad right-of-way for just under 1750 feet, but the deeds only account for 125 feet of that length.  In short, the evidence submitted by plaintiffs is insufficient to determine whether Cleveland Lumber Company, Inc. owns all of the property constituting claim 16 that abuts the railroad right-of-way.  Plaintiffs have only established such ownership for the portion of the property described in the Dellinger deed, which is adjacent to the railroad right-of-way for 125 feet.  Consequently, the court grants plaintiffs' motion with respect to the parcel described in the Dellinger deed, and because plaintiffs have not otherwise satisfied their burden of establishing ownership of property adjacent to the railroad right-of-way, grants defendant's cross-motion with respect to the remainder of the property constituting claim 16.[16]

---

[16] The court further notes that although defendant is correct that the deeds submitted by plaintiffs describe, at most, a four-acre area of land, it provides no evidence in support of its contention that county records describe claim 16 as a 15.73-acre parcel.  These county records are not part of the record before the court, leaving the court with no way, beyond the assertions of counsel, to ascertain the size of the parcel.  Cf. Meridian Eng'g Co. v. United States, 885 F.3d 1351, 1358 (Fed. Cir. 2018) ("[U]nsworn attorney argument . . . is not evidence . . . ."); Mel Williamson, Inc. v. United States, 229 Ct. Cl. 846, 848 (1982) ("Argument is not fact."); Del., Lackawanna & W. R.R. Co. v. United States, 54 Ct. Cl. 35, 41-42 (1919) ("The court can not accept asseverations of counsel, as to facts, made in argument, whether denied or conceded by the other side at the bar, without any stipulation duly filed or other evidence . . . .").

## 2. Claim 65

Second, with respect to claim 65, defendant contended in its cross-motion that plaintiffs only produced estate documents, "which do not describe with specificity the property at issue and do not confirm that the decedent owned it." Cross-Mot. 7. With their reply and response, plaintiffs submitted a deed, a death certificate, and a Cleveland County "property card." Plaintiffs contend that these documents, in conjunction with the previously submitted estate documents, establish that Harold and Carolyn Borders acquired the property in 1999, that Carolyn Borders died in 2000, that Harold Borders died in 2001, and that upon Harold's death, his three children inherited the property. In its reply, defendant argues, without any factual support, that the deed "does not match the tract dimensions delineated by the county records, which describe this property as being approximately 145 feet in length, running parallel to the rail corridor." Reply 3. Moreover, defendant asserts, "[t]he problem in determining whether this deed is the correct one is exacerbated by the fact that it does not describe the property with any specificity; rather than describing the property with metes and bounds, it references other deeds and plat books that were not produced by [plaintiffs]." Id.

The deed submitted by plaintiffs describes the parcel associated with claim 65 as follows:

Being all of Lot Nos 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 41, 42, 43, 44, 45, 46, 47, 48, 49, 50, 51, 52, and 53 of Block "C" of the J.B. Lowery property as shown on a plat as recoded in Plat Book 7, Page 93 of the Cleveland County Registry and reference is hereby made to said plat for a full metes and bounds description as if fully set out herein.

Reply & Resp. Ex. 7 at 63. This description, on its own, is insufficient to determine whether Harold Borders's children own land adjacent to the railroad right-of-way. However, plaintiffs' overview map depicts the parcel associated with claim 65 as adjacent to the railroad right-of-way. Further, in support of its cross-motion, defendant submitted a WebGIS map that depicts the parcel as adjacent to the railroad right-of-way. Although these maps are not sufficient to establish ownership of the parcel, they do create a genuine issue of material fact. Thus, the court denies both summary judgment motions with respect to claim 65.

## 3. Claims 89a and 89b

Third, with respect to claims 89a and 89b, defendant contended in its cross-motion that plaintiffs did not produce any deeds to establish ownership. With their reply and response, plaintiffs submitted a deed and estate documents, arguing that this material establishes that C.L. and Bessie Sue Lavender acquired the property in 1953, that the property was conveyed to their son Claude Lavender and his wife Jacqueline Lavender, and that Claude Lavender died in 2013, leaving his widow as the sole owner. In its reply, defendant remarks that the deed produced by plaintiffs "describes more than 20 parcels," and states that it "has not been able to match the description of the parcels in Claims 89a and 89b with any of the parcels described in the deed." Reply 3. Defendant also asserts that "the county records" indicate that a deed not supplied by

plaintiffs–located at page 409 of book 3E–applies to the parcels described in claims 89a and 89b.[17]  Id.

As defendant observes, the deed submitted by plaintiffs contains metes-and-bounds descriptions of twenty separate tracts.  These descriptions rely almost entirely on landmarks (stones, trees, creeks, etc.), surrounding properties (identified by the owners' names), and unnamed or currently nonexistent roads to define the boundaries of each tract.  Only one of the tracts is described as being bounded by a railroad right-of-way:  tract 13 runs "with Southern Railroad . . . 950 feet" from "Mrs. J.P. Aydlotte's line" to "the corner of Hazel Turner's land[.]"[18]  Reply & Resp. Ex. 8 at 72.  However, the only map in the record that depicts the boundaries of the parcels associated with claims 89a and 89b is plaintiffs' overview map, which indicates that the two parcels abut the railroad right-of-way for less than 500 feet.  Furthermore, the map reflects that the parcels are bounded by Lavender Road and/or Blacksburg Road, but neither road is mentioned in the deed plaintiffs submitted.  In short, the evidence submitted by plaintiffs is insufficient to determine whether Jacqueline Lavender owns the parcels associated with claims 89a and 89b.  Consequently, the court grants defendant's cross-motion with respect to these claims.  Furthermore, as explained below, summary judgment for defendant as to claims 89a and 89b is also appropriate on alternative grounds.

### E.  Claims for Which Defendant Contends That Plaintiffs Have Not Proven Ownership of the Land Underlying the Railroad Right-of-Way

For the fourth category of claims, defendant contends that plaintiffs have not established a property interest in the land underlying the railroad right-of-way.  As discussed below, defendant divides these sixty-one claims into four subcategories.[19]

### 1.  Claims Affected by an Intervening Parcel

The first subcategory includes two claims for which defendant argues that the relevant parcels are separated from the railroad right-of-way by an intervening parcel:

| Claim | Property Owner | Parcel Number |
|-------|----------------|---------------|
| 32b | Hoyle Plumbing Company, Inc. | (b) 2546150563 |

---

[17]  Plaintiffs indicated in their reply and response that they were submitting two new deeds:  one located at page 365 of book 6W, and one located at page 409 at book 13E.  However, plaintiffs only submitted the deed located at page 365 of book 6W.

[18]  A railroad right-of-way is mentioned in the description of only one other tract–the third tract of tract 10.  However the description indicates that the railroad right-of-way runs through, not along, the tract.  Plaintiffs' overview map does not depict the parcels associated with claims 89a or 89b as crossing the railroad right-of-way at any point.

[19]  One claim (claim 73) appears in two subcategories.

| 73[20] | Robert Carl and Marilyn D. Merck | 2544773856 |
|---|---|---|

Specifically, defendant contended in its cross-motion that "WebGIS maps . . . confirm that the claims . . . have intervening parcels, and therefore do not extend to the center of the rail corridor."[21]  Cross-Mot. 10.  In response, plaintiffs argue that the maps submitted by defendant do not support its contention of an intervening parcel.  Rather, they assert, the GIS maps attached to their reply and response indicate that the parcels at issue abut the railroad right-of-way.  Defendant, in its reply, contends that the maps submitted by plaintiffs actually establish the existence of an intervening parcel.

With respect to claim 32b, the maps submitted by the parties depict differing boundaries for the parcel at issue.  Defendant's map depicts the parcel as abutting the eastern edge of South Morgan Street, while plaintiffs' map depicts the parcel as extending beyond the western edge of South Morgan Street.  Problematically, the only deed pertaining to this parcel in the record lacks a metes-and-bounds description that could clarify the true boundaries of the parcel:

> Located in the City of Shelby, in the section known as South Shelby, and being all of Lot No. 17 of the Consolidated Textile Co., Inc. property as shown on plat thereof prepared from an actual survey by G. Sam Rowe, Registered Civil Engineer, dated September 16, 1955, of record in Book of Plats No. 7 at Page 8, Cleveland County Public Registry, North Carolina, reference to the said plat, and the record thereof, being hereby made for a full and complete description and identification of said lot.

Third Am. Compl. Ex. 160 at 435.  Thus, the court has no way to ascertain which map accurately depicts the parcel.  Moreover, plaintiffs' map is confusing; it appears to indicate, contrary to their assertion, the existence of an intervening parcel.  Because neither plaintiffs nor defendant has established the absence of a genuine issue of material fact regarding the boundaries of the parcel described in claim 32b, the court denies both motions with respect to that claim.

---

[20]  As discussed below, defendant also contends that the parcel described in claim 73 is cut off from the railroad right-of-way by an intervening public road.

[21]  The WebGIS maps submitted by defendant all bear the URL of the source website (http://www.webgis.net/nc/Cleveland), and the website includes the following disclaimer:

> The information contained on this site is furnished by government and private industry sources and is believed to be accurate but accuracy is not guaranteed. Mapping information is a representation of various data sources and is not a substitute for information that would result from an accurate land survey.  The information contained hereon does not replace information that may be obtained by consulting the information's official source.  In no event shall Cleveland County, NC or the consultants of Cleveland County, NC be liable for any damages, direct or consequential, from the use of the information contained on this site.

With respect to claim 73, the maps submitted by the parties once again depict differing boundaries for the parcel at issue.  Based on the metes-and-bounds description contained in the relevant deed, defendant's map contains the accurate depiction:  a rectangular parcel (100 by 221 feet) with one side running along the southwestern edge of Peeler Street and an adjacent side running along the northwestern edge of North Carolina Highway 180 ("Highway 180").[22] However, both maps depict the boundaries of the purportedly intervening parcel as only partially cutting off the relevant parcel from the railroad right-of-way, with approximately 3/4 of the southeastern side of the parcel being adjacent to a public road, which itself is adjacent to land that appears to be a combination of the public road right-of-way and the railroad right-of-way. Because there is no material dispute regarding the existence of a parcel that partially cuts off the parcel associated with claim 73 from the railroad right-of-way, the court grants in part defendant's cross-motion with respect to the portion of the parcel adjacent to the intervening parcel.  However, because defendant also contends that Highway 180 cuts off the parcel from the railroad right-of-way, the court defers ruling on plaintiffs' motion until the following section.

## 2. Claims Affected by an Intervening Public Road

Next, for fifty-eight of plaintiffs' claims,[23] defendant contends that plaintiffs have not established that they own the land underlying the railroad right-of-way because a public road separates the relevant parcels from the railroad right-of-way.  These claims include the following:

| Claim | Property Owner | Parcel Number |
|---|---|---|
| 2 | M&B Associates, Inc. | 2518834152 |
| 3 | James W. Morgan, Joseph H. Morgan, and Eleanor Ann Morgan | 2518921759 |
| 13 | Capitol Funds, Inc. | 2527199552 |
| 23a | | (a) 2546181964 |
| 23b | | (b) 2546181265 |
| 20a | Don A. and Linda H. Jones | (a) 2547106861 |
| 20b | | (b) 2547106776 |
| 22 | Royster P&M Warehouse, Inc. | 2546190578 |
| 27 | Thurman Larry Moore, POA for Annie M. Moore | 2546171485 |
| 30a | Carter Chevrolet Inc. | (a) 2546161704 |
| 30b | | (b) 2546160713 |
| 30c | | (c) 2546069513 |
| 41 | Melinda Tessneer | 2546027714 |

---

[22] Contrary to the legal description in the deed, the parcel depicted on plaintiffs' map is not rectangular and extends beyond the southeastern edge of Highway 180.

[23] Defendant identifies most of these claims in its reply in footnotes 7, 8, and 9, and in Exhibit 2.  Two claims–claims 60 and 61a–are only identified in defendant's cross-motion (in footnote 9).

| 58 | Vickie M. Powell | 2544899387 |
|---|---|---|
| 59 | William Keith and Phyllis H. Hamrick | 2544895359 |
| 60 | Craig P. Gates, Inc. | 2544894275 |
| 61a | Joseph and Rebecca Barnes | (a) 2544893054 |
| 62 | Dawn Renee Greene | 2544885663 |
| 63 | Hamrick Bennet Heirs | 2544884477 |
| 64 | Lee Van and Penny Denise Canipe | 2544884316 |
| 65[24] | Penny Denise Canipe, Susan Borders Lail, and Michael Gene Borders | 2544883340 |
| 66 | Charlotte Ellis, on Behalf of Barbara C. Hopper's Estate | 2544882194 |
| 68 | Victoria Lynn Hope | 2544778874 |
| 71 | Tracy Lee Kale and Penny Champion Kale | 2544786047 |
| 73[25] | Robert Carl and Marilyn D. Merck | 2544773856 |
| 82 | Patsy L. Coulson | 2544445185 |
| 83 | Jewell S. Hyman | 2544435974 |
| 87 | Mary Jeannine Allen | 2544411976 |
| 89a 89b[26] | Jaqueline H. Lavender | (a) 2543481298 (b) 2543481060 |
| 91 | Elizabeth Lee Lavender | 2543378857 |
| 93a 93b | Gene R. Deaton, II | (a) 2543269651 (b) 2543269534 |
| 94 | Sheree W. Dotson f/k/a Sheree W. Johnson, and Margaret Sue White | 2543269416 |
| 95 102a 102b[27] | Robert Michael Wilkins | 2543258867 (a) 2543340870 (b) 2543258867 |

[24] As discussed above, defendant also contends that plaintiffs have not satisfied their burden of establishing that the property owner associated with claim 65 actually owns the parcel at issue. The court denied summary judgment to both plaintiffs and defendant on this issue.

[25] As discussed above, defendant also contends that the parcel described in claim 73 is cut off from the railroad right-of-way by an intervening parcel. The court granted summary judgment in part to defendant on this issue.

[26] As discussed above, defendant also contends that plaintiffs have not satisfied their burden of establishing that the identified property owner associated with claims 89a and 89b actually owns the parcels at issue. The court granted summary judgment to defendant on this issue.

[27] The first set of joint stipulations and Exhibit A to plaintiffs' motion indicate that the parcel numbers for claim 102a are 2543248704 and 25433408, and that the parcel number for claim 102b is 2543258867 (the same as for claim 95). However, the second and fourth set of joint stipulations and Exhibit 1 to plaintiffs' motion indicate that the parcel number for claim

| 96 | Leland C. and Laladge J. Moss | 2543352883 |
|---|---|---|
| 97 | Bobby A. and Ann M. Thackerson | 2543352699 |
| 98a<br>98b | Tim White and Sheree Dotson | (a) 2543258784<br>(b) 2543259425 |
| 99 | Jonathan E. and Janet M. Doupe | 2543258696 |
| 100 | Sue M. White | 2543259174 |
| 101a<br>101b | Keith and Pattie Ellis Norman | (a) 2543353157<br>(b) 2543353076 |
| 103 | Julie A. Owle | 2543345517 |
| 105a<br>105b | Lena M. Francis | (a) 2543347236<br>(b) 2543347236 |
| 109 | Daniel Wray Dedmon | 2543216138 |
| 110 | Dennis Coleman | 2543216013 |
| 112 | Mary E. Abernathy | 2543205777 |
| 113 | Gisela A. Bowen | 2543205620 |
| 114 | Kathy T. Carter | 2543202090 |
| 115 | Roy M. Rizzo | 2542292773 |
| 116 | Andrew Thomas Dedmon | 2542199691 |
| 117 | William R. and Elizabeth Poston Cameron | 2542192190 |
| 119a<br>119b | Rodney Harold and Sara O. Powell | 2542188389 |

By way of background, North Carolina has codified the common-law presumption that owners of land adjacent to an abandoned railroad easement own to the centerline of the easement.[28]  See N.C. Gen. Stat. § 1-44.2; McDonald's Corp., 450 S.E.2d at 890-91.  However, pursuant to the statute codifying the presumption, North Carolina General Statutes section 1-44.2 ("section 1-44.2"), a different rule applies when the abandoned railroad easement adjoins a public road right-of-way.  Relying on the latter rule, defendant argues that because the parcels described in the fifty-eight claims at issue are separated from the railroad right-of-way by a public road, they do not include the land underlying the railroad right-of-way.

In response, plaintiffs assert that the six public roads at issue–Washburn Switch Road, South Morgan Street, South Post Road, Topic Street, Blacksburg Road, and Bettis Road–are

---

102a is 2543340870, and that the parcel number for claim 102b is 2543248704.  These latter parcel numbers appear to be the correct parcel numbers.

[28]  North Carolina is one of a small number of states that has codified the centerline presumption.  See Danaya C. Wright, Doing a Double Take:  Rail-Trail Takings Litigation in the Post-Brandt Trust Era, 39 Vt. L. Rev. 703, 726 (2015) ("At least four states have passed legislation providing that adjoining landowners will be deemed to own to the centerline of abandoned railroad corridors (where the railroad held only an easement):  Arkansas, Indiana, Iowa, and North Carolina.")

easements.[29]  Because easements do not affect title to the underlying fee estate, plaintiffs argue that the centerline presumption set forth in section 1-44.2(a) applies to the parcels at issue. Additionally, for certain claims, plaintiffs contend that the legal descriptions in the relevant deeds support their contention that those parcels extend to the centerline of the railroad right-of-way.  Finally, plaintiffs generally argue that defendant has misconstrued section 1-44.2(a) to cut off their property interests underlying the railroad right-of-way.

### a. Section 1-44.2(a)

Central to the parties' contentions is the meaning and application of section 1-44.2. Thus, the court turns to the text of that statute to ascertain how it should be construed.  See Kingdomware Techs., Inc. v. United States, 136 S. Ct. 1969, 1976 (2016) ("In statutory construction, we begin 'with the language of the statute.'" (quoting Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002))).

Section 1-44.2 is titled "Presumptive ownership of abandoned railroad easements" and provides, in relevant part:

> (a)  Whenever a railroad abandons a railroad easement, all right, title and interest in the strip, piece or parcel of land constituting the abandoned easement shall be presumed to be vested in those persons, firms or corporations owning lots or parcels of land adjacent to the abandoned easement, with the presumptive ownership of each adjacent landowner extending to the centerline of the abandoned easement.  In cases where the railroad easement adjoins a public road right-of-way, the adjacent property owner's right, title and interest in the abandoned railroad easement shall extend to the nearest edge of the public road right-of-way.
>
> . . . .
>
> (b)  The presumption established by this section is rebuttable by showing that a party has good and valid title to the land.

N.C. Gen. Stat. § 1-44.2.  In short, the statute provides the answer to two questions:  (1) Who owns an abandoned railroad easement when that easement is adjacent to multiple parcels of land?  (2) Who owns an abandoned railroad easement when that easement adjoins a public road right-of-way?

---

[29]  In support of this contention, plaintiffs offer an affidavit from an employee of the North Carolina Department of Transportation ("NCDOT") that indicates that NCDOT could not locate any information regarding whether the state acquired the roads at issue by easement or fee, and therefore NCDOT holds right-of-way easements for maintenance purposes.  However, the affidavit applies only to South Morgan Street, South Post Road, Blacksburg Road, and Bettis Road.  It does not mention Washburn Switch Road or Topic Street.

The answer to the first question is straightforward: an owner of a parcel adjacent to an abandoned railroad easement presumptively owns to the centerline of the easement. Thus, in the example depicted in Figure 1, the owner of Parcel A presumptively owns the half of the abandoned railroad easement adjacent to Parcel A and the owner of Parcel B presumptively owns the half of the abandoned railroad easement adjacent to Parcel B.



**Figure 1**

The answer to the second question is also straightforward: an owner of a parcel adjacent to an abandoned railroad easement that itself adjoins a public road right-of-way presumptively owns to the near edge of the public road. Thus, in the example depicted in Figure 2, the owner of Parcel A presumptively owns to the near edge of the public road right-of-way (in other words, all of the abandoned railroad easement), leaving the owner of Parcel B with no interest in the abandoned railroad easement. See also Love v. United States, 889 F. Supp. 1548, 1581 (E.D.N.C. 1994) ("Upon abandonment of railroad service, the land reverted to the adjacent landowners under both [section 1-44.2] and common law principles. The United States was an adjacent landowner at the time of this abandonment. Furthermore, since it is not disputed that a public highway bounded the property on the other side, the United States obtained the fee interest underlying the entire former right-of-way.").



**Figure 2**

What happens, however, when the public road right-of-way is wholly encompassed within the abandoned railroad easement? The North Carolina Supreme Court addressed this

question in <u>Nelson v. Battle Forest Friends Meeting</u>, 436 S.E.2d 122 (N.C. 1993).[30] In such circumstances, the court held, "the public road right-of-way [does] not adjoin the abandoned railroad easement and the second sentence of [section] 1-44.2(a) does not apply . . . ." <u>Id.</u> at 124; <u>see also</u> <u>id.</u> at 125 ("We believe that the definition of 'adjoin' does not include a tract which . . . is included within the bounds of another tract. To adjoin, a tract must be 'close to or in contact,' 'next to' or 'touching.'"). Consequently, the two adjacent landowners would each own to the centerline of the abandoned railroad easement pursuant to the first sentence of section 1-44.2(a). <u>Id.</u> at 125.

### b. Summary Judgment Is Not Appropriate as to the Thirty-Three Claims Where the Intervening Public Road May Be Situated Completely Within the Railroad Right-of-Way

It is undisputed that for all fifty-eight claims in this second subcategory, the relevant parcels are akin to Parcel B in Figure 2–separated from the railroad line by a public road. Thus, pursuant to the second sentence of section 1-44.2(a), if the public road right-of-way adjoins the railroad right-of-way, then whoever owns the property on the other side of the railroad right-of-way (the property akin to Parcel A in Figure 2) presumptively owns the entirety of the railroad right-of-way. However, for many of the fifty-eight claims identified by defendant, the evidence submitted by the parties suggests, but does not definitively establish, that the public road is situated within the confines of the railroad right-of-way.

To reach this conclusion, the court first reviewed the deeds reflecting the original conveyances to Norfolk Southern's predecessor to determine the width of the railroad right-of-way. These deeds generally reflect that the railroad right-of-way is 100 feet wide (fifty feet from each side of the centerline).[31] Next, the court reviewed the deeds reflecting the conveyance of

---

[30] North Carolina state appellate courts have not otherwise addressed the public-road-right-of-way provision of section 1-44.2(a).

[31] Many of the deeds explicitly granted a 100-foot-wide right-of-way. However, the remaining deeds were not as clear. For example, the court was unable to ascertain the width of the right-of-way granted in the deed marked as Exhibit 27 because the deed is illegible. In addition, the deeds in Exhibits 17, 48, and 49 only describe a five-foot-wide right-of-way, but a review of plaintiffs' overview map reflects that there is another deed conveying a wider right-of-way at that location. Further, in the deeds marked as Exhibits 20, 34, 44, and 52, the space where the width of the right-of-way was to be written was left blank, and in the deed marked as Exhibit 51, the width of the right-of-way was unstated. Finally, plaintiffs did not include the second page of the deed submitted as Exhibit 36, which presumably is the page that sets forth the width of the right-of-way. Despite these issues, the court recognizes that North Carolina law, at the time Norfolk Southern's predecessor acquired its easement in the late 1880s, generally limited the width of railroad rights-of-way to 100 feet. <u>See</u> The Code of North Carolina, ch. 49, § 1957(4) (1883) (indicating that the General Assembly, during its 1871-1872 session, enacted a law providing that "[e]very railroad corporation shall have power . . . [t]o lay out its road not exceeding one hundred feet in width"). <u>But see</u> Battle's Revisal of the Public Statutes of North Carolina, ch. 99, § 29(4) (1873) (indicating that the General Assembly, during its 1871-1872 session, enacted a law–the same law described in the 1883 code–providing that "[e]very corporation formed under this chapter shall have power . . . [t]o lay out its road not exceeding

the relevant parcels to the current property owners to determine how the boundaries of the parcels were described; in some cases, the deeds did not include a metes-and-bounds description, but plaintiffs submitted a subdivision plat that indicated the boundaries of the parcels.[32]  The court then roughly outlined the parcels' boundaries on the WebGIS maps submitted by defendant and, using the scales on the maps, determined whether it was possible that the public road was within the railroad right-of-way.  For the following thirty-three claims, the court determined that it was possible (and in some cases, quite likely) that the public road exists within the railroad right-of-way:  2, 3, 13, 22, 23a, 23b, 27, 30a, 30b, 30c, 41, 58, 64, 66, 73 (the portion not affected by the intervening parcel), 87, 91, 93a, 93b, 95, 96, 98a, 98b, 102a, 102b, 103, 109, 110, 112, 113, 114, 116, and 117.  If the public road rights-of-way do, in fact, exist solely within the confines of the railroad right-of-way, then the owners of the parcels described in these claims presumptively own to the centerline of the railroad right-of-way, Nelson, 436 S.E.2d at 124-25, unless another party establishes "good and valid title to the land," N.C. Gen. Stat. § 1-44.2(b).

In applying section 1-44.2, as clarified by Nelson, to plaintiffs' claims, the court has necessarily rejected several of the arguments advanced by the parties.  For example, defendant argues that because the deeds associated with the claims at issue specifically identify one of the parcels' boundaries as the near edge or centerline of the public road or as the near edge of the railroad right-of-way, the relevant plaintiffs cannot own to the centerline of the railroad right-of-way.  This argument reflects a misunderstanding of section 1-44.2, which applies to parcels that are "adjacent" to an abandoned railroad easement.  There is no requirement that the parcels underlie the easement for the centerline presumption (or the public-road-right-of-way exception) to attach.

In addition, plaintiffs argue that Washburn Switch Road, South Morgan Street, and South Post Road are easements and therefore the centerline presumption applies to the adjacent parcels.  However, a public road that is an easement is exactly the situation addressed by section 1-44.2, which is expressly concerned with the effect of a "public road right-of-way" on the ownership of an abandoned railroad easement.

Plaintiffs further assert that two of the public roads at issue–Blacksburg Road and Bettis Road–existed at the time Norfolk Southern's predecessor acquired its right-of-way.[33]  Consequently, they argue that the property owners who conveyed easements to the railroad must

---

twelve rods [198 feet] in width"); Hendrix v. S. Ry. Co., 77 S.E. 1001, 1004-05 (N.C. 1913) (holding that when a deed "conveys 'all right, title and claim to so much of our land as may be occupied by the said railroad, its banks, ditches and works,' . . . the right of way of the [railroad] is confined to the land occupied for its tracks, banks, ditches, and works, but that such occupation . . . may be extended from time to time, . . . not to exceed, however, the width of the right of way provided in its charter.").  The court further recognizes that the ICC valuation maps generally depict a railroad right-of-way not exceeding 100 feet in width.

[32]  The claims for which the deeds lacked metes-and-bounds descriptions are claims 109, 110, 112, 113, and 114.

[33]  Plaintiffs' assertion is based on the ICC valuation maps.

have owned the land underlying the roads, therefore rebutting the presumption that that the owner of the property on the opposite side of the railroad right-of-way owns the entire railroad right-of-way. However, as defendant notes, plaintiffs have not provided evidence that the land underlying the public road was conveyed to subsequent purchasers. The only deeds before the court indicate that the relevant boundary is either the near edge or centerline of the public road, or the edge of the railroad right-of-way (which might coincide with the near edge or centerline of the road). The court has no way of ascertaining whether a prior owner of the parcel that included the railroad right-of-way divided that parcel in such a way as to convey the land underlying the railroad right-of-way to a purchaser not in the relevant plaintiff's chain of title.

In short, the court finds that the proper application of section 1-44.2, as clarified by Nelson, might result in the conclusion that the plaintiffs who own the parcels associated with the thirty-three claims at issue presumptively own to the centerline of the railroad right-of-way. However, because its method for ascertaining the location of the public road rights-of-way is necessarily imprecise, the court declines to grant summary judgment to plaintiffs or defendant as to these thirty-three claims. In other words, there is a genuine issue of material fact as to the property interest owned by the relevant plaintiffs. To prove that these plaintiffs presumptively own to the centerline of the railroad right-of-way, plaintiffs will need to marshal evidence establishing that the public road rights-of-way are, in fact, situated within the railroad right-of-way.[34]

### c. Summary Judgment Is Not Appropriate as to Eleven Additional Claims Where the Intervening Public Road May Be Situated Completely Within the Railroad Right-of-Way

The thirty-three claims described above are not the only claims for which the Nelson rule might operate to grant presumptive ownership to the centerline of the railroad right-of-way pursuant to the first sentence of section 1-44.2(a). There are eleven additional claims for which the public road might lie within the railroad right-of-way. Because of their unique attributes, the court addresses each claim separately.

Claim 59. The deed associated with claim 59 describes a 200-foot-deep parcel bounded by Fourth Street to the north, Wright Avenue to the west, lot 41 to the south, and Broad Street to the east. However, the boundaries depicted on the WebGIS map submitted by defendant are different; the map shows the 200-foot-deep parcel bounded by an unnamed dirt track to the north, Topic Court to the west, Topic Street to the south, and nothing in particular to the east. The map further reflects that approximately sixty-five feet east of the eastern boundary of the parcel is Topic Street (which is T-shaped), that the railroad line is situated to the east of Topic

---

[34] Plaintiffs will also need to marshal evidence to establish that Washburn Switch Road is an easement and not a fee estate to prevail with respect to claims 2, 3, and 13. Further, although the parties stipulated that plaintiffs owned the parcels associated with claims 98a, 98b, and 116, and although WebGIS maps submitted by defendant depict the eastern boundary of these parcels as the western edge of Bettis Road, plaintiffs did not submit the relevant deeds that would allow the court to ascertain how the eastern boundary of the parcels is actually described. (The deeds submitted by plaintiffs–Exhibits 115 and 121 to their third amended complaint–were not the correct deeds.)

Street, and that South Post Road lies to the east of the railroad line.  Plaintiffs aver that South Post Road is the current name of Broad Street at this location (in Patterson Springs, North Carolina).[35]  However, the relevant ICC valuation map–which shows the parcel as being bounded by Fourth Street, Wright Avenue, lot 41, and Broad Street–suggests that the deed's reference to Broad Street is actually a reference to the road now called Topic Street, and not South Post Road.  Based on the description in the deed, and to the extent that South Post Road is the current name of Broad Street, plaintiffs may be able to overcome the presumption set forth in the second sentence of section 1-44.2(a) since the eastern boundary of the parcel would fall beyond (and therefore include) the railroad line.  However, based on the WebGIS and ICC valuation maps, Topic Street is an intervening road, and may be situated completely within the railroad right-of-way.  Because there is conflicting evidence in the record concerning the precise boundaries of the parcel, the court declines to grant summary judgment to plaintiffs or defendant with respect to claim 59.[36]

Claim 60.  The deed associated with claim 60 describes a 200-foot-deep parcel bounded by Fourth Street to the north, Wright Avenue to the west, lot 41 to the south, and Broad Street to the east.  However, the boundaries depicted on the WebGIS map submitted by defendant are different; the map shows the 200-foot-deep parcel bounded by Topic Street to the north, Topic Court to the west, lot 41 to the south, and nothing in particular to the east.  The map further reflects that this parcel is adjacent to the parcel associated with claim 59, and that similar to the latter parcel, Topic Street, the railroad right-of-way, and South Post Road are situated–in that order–to its east.  Accordingly, the court's analysis of claim 59, as well as the conclusion it reached, applies equally to claim 60.

Claim 61a.  The deed associated with claim 61a includes a metes-and-bounds description of a 100-by-200-foot parcel, and generally describes the parcel as

> Being all of that property denominates "Third Lot" in that conveyance of B.T. Falls, Commissioner to J.Q. Earl, dated November 7, 1933, the same being all of Lot No. 10 of the L.H. Paterson land as shown on map of said lands in Special Proceedings Number 1919 in the Office of the Clerk of the Superior Court for Cleveland County, North Carolina . . . .

Third Am. Compl. Ex. 74 at 209.  Neither the metes-and-bounds description nor the general description is sufficient to ascertain the precise location of the parcel or how the parcel is situated with respect to the railroad right-of-way or any intervening public roads.  The only map in the record that shows the location of parcel is plaintiffs' overview map,[37] which suggests that the

---

[35]  As described below, further south along the railroad right-of-way, in Earl, North Carolina, the current name of Broad Street is Bettis Road and/or Blacksburg Road.

[36]  In addition to proving the boundaries of the parcel associated with claim 59, plaintiffs will need to marshal evidence that Topic Street is an easement and not a fee estate.

[37]  The relevant valuation map (submitted by plaintiffs as Exhibit 3 to their third amended complaint) does not depict the "Lot No. 10" mentioned in the deed.

parcel is similarly situated to the parcels associated with claims 59 and 60 in that Topic Street, the railroad right-of-way, and South Post Road lie to its east.  Thus, notwithstanding plaintiffs' failure to establish the absence of a genuine issue of material fact, the court treats claim 61a in the same manner as those claims and declines to grant summary judgment to plaintiffs or defendant.

Claim 68.  The deed associated with claim 68 indicates that the southwestern point of the roughly triangular-shaped parcel is an "iron pin set in the Southern Railroad Right-of-Way" and that the boundary line runs to the northeast in three segments to "an unmarked point on the N.C.D.O.T. Right of Way[.]"  Reply & Resp. Ex. 16.  The WebGIS map submitted by defendant reflects that there are possibly two intervening roads affecting the relevant plaintiff's property interest in the railroad right-of-way:  Brierwood Farms Road and South Post Road.  The court cannot ascertain, from the metes-and-bounds description in the deed, the extent to which these two roads are situated within the railroad right-of-way.  Thus, the court declines to grant summary judgment to plaintiffs or defendant with respect to claim 68.

Claims 97 and 99.  The parcels associated with claims 97 and 99 are situated on opposite sides of the railroad right-of-way, with Blacksburg Road and Bettis Road constituting intervening public roads for each parcel, respectively (and Bettis Road appearing to be fully contained within the railroad right-of-way).  The deed associated with claim 97 indicates that the western boundary of the parcel is the east edge of the "Broad Street (N.C. Hwy. 198)" right-of-way, which is also the "East edge of the right of way of Southern Railroad."  Third Am. Compl. Ex. 250 (emphasis added).  The deed associated with claim 99 indicates that the eastern boundary of the parcel is the "West edge of Broad Street."  Third Am. Compl. Ex. 123.  Plaintiffs aver that Broad Street is now known as Bettis Road at this location (in Earl, North Carolina).  However, North Carolina Highway 198 is, in the vicinity of the two parcels at issue, currently known as Blacksburg Road, not Bettis Road,[38] and the WebGIS map submitted by defendant suggests that the western boundary of the parcel associated with claim 97 is Blacksburg Road.  Moreover, the relevant ICC valuation map depicts both roads, with the road currently known as Bettis Road labeled as both "Broad St." (in white print) and as a "dirt street" (in yellow handwriting), and the road currently known as Blacksburg Road labeled as both "Broad St." (in black handwriting), and as a "dirt" street (in yellow handwriting).  Given the uncertainty regarding what the two deeds mean by "Broad Street," it is not possible for the court to ascertain the western boundary of the parcel associated with claim 97 or, consequently, how to apply the rules set forth in section 1-44.2(a) as between the parcels associated with claims 97 and 99.  Thus, the court declines to grant summary judgment to plaintiffs or defendant with respect to claims 97 and 99.

Claim 100.  The deed associated with claim 100 describes the parcel as "lots numbers 50 and 51 . . . ."  Third Am. Compl. Ex. 260 at 723.  Although the deed lacks a metes-and-bounds description, when it is read in conjunction with the relevant ICC valuation map, it is apparent that the eastern boundary of the parcel is the road currently known as Bettis Road.  According to the WebGIS map submitted by defendant, Bettis Road may exist completely within the railroad

---

[38]  The court takes judicial notice of this fact pursuant to Rule 201(b)(2) of the Federal Rules of Evidence.

right-of-way.  Thus, the proper application of section 1-44.2(a), as clarified by Nelson, might result in the conclusion that the plaintiff who owns the parcel associated with claim 100 presumptively owns to the centerline of the railroad right-of-way.  Thus, the court declines to grant summary judgment to plaintiffs or defendant with respect to claim 100.

Claims 101a and 101b.  The deeds associated with claims 101a and 101b indicate that the western boundary of both parcels is the "East edge of Broad Street."  Third Am. Compl. Ex. 208 at 551, 553.  Although the WebGIS map submitted by defendant suggests that the western boundary of the parcels is the eastern edge of Blacksburg Road, as noted with respect to claims 97 and 99, there is a lack of clarity regarding whether the eastern edge of Broad Street is actually the eastern edge of Bettis Road or the eastern edge of Blacksburg Road.  Accordingly, it is not possible to ascertain the western boundary of the parcels associated with these claims or, consequently, how the rules set forth in section 1-44.2(a) should be applied to the parcels.  The court therefore declines to grant summary judgment to plaintiffs or defendant with respect to claims 101a and 101b.

Claims 105a and 105b.  The deed associated with claims 105a and 105b includes a (somewhat opaque) metes-and-bounds description of a single parcel (leading defendant to refer to the claim as "claim 105").  Using an informal diagram submitted by plaintiffs as a guide, the court was able to trace the approximate boundary of the parcel on the WebGIS map submitted by defendant.  The southern end of the western boundary of the parcel appears to be adjacent to the railroad right-of-way with no intervening road, and the northern end of the western boundary of the parcel is separated from the railroad right-of-way by Blacksburg Road.  Further, it appears that at least a portion of Blacksburg Road may be completely encompassed within the railroad right-of-way.  Thus, the proper application of section 1-44.2(a), as clarified by Nelson, might result in the conclusion that the plaintiff who owns the parcel associated with claim 100 presumptively owns to the centerline of the railroad right-of-way (due to the operation of the first sentence of section 1-44.2(a) with respect to the southern portion of the western boundary of the parcel, and the holding of Nelson with respect to the northern portion of the western boundary of the parcel).  Thus, the court declines to grant summary judgment to plaintiffs or defendant with respect to claims 105a and 105b.

**d.  Summary Judgment Is Not Appropriate as to Six Additional Claims Where, Pursuant to Evidence Submitted by Defendant, the Intervening Public Road May Be Situated Completely Within the Railroad Right-of-Way**

There are an additional six claims for which the evidence submitted by the parties suggests that the public road might exist completely within the railroad right-of way:  claims 20a, 20b, 63, 65, 71, and 115.[39]  For these claims, the deeds submitted by plaintiffs lack a metes-and-bounds description from which the court could ascertain the boundaries of the parcels at issue.  However, the WebGIS maps submitted by defendant suggest that the parcels are adjacent to the public road and that the public road may be within the railroad right-of way.  Although it is plaintiffs' burden to establish that their property is adjacent to the railroad right-of-way, the court

_____

[39]  The court previously denied the parties' summary judgment motions as to claim 65 on different grounds.

will not ignore evidence in the record suggesting the existence of a genuine issue of material fact.  Accordingly, the court declines to grant summary judgment to plaintiffs or defendant with respect to these six claims.

### e.  Defendant Is Entitled to Summary Judgment as to Claims 82, 83, 89a, 89b, 119a, and 119b

In contrast with the claims discussed above, the court concludes that plaintiffs have not satisfied their burden of establishing that the parcels associated with claims 82, 83, 89a, 89b, 119a, and 119b are adjacent to the railroad right-of-way.[40]  For claims 82 and 83, the deeds submitted by plaintiffs do not contain a metes-and-bounds description of the associated parcels, but instead indicate that such a description can be found in a recorded subdivision plat.  However, plaintiffs did not submit the plat in support of its motion, leaving the court with no way to ascertain the boundaries of the parcels at issue.  Further, the WebGIS maps submitted by defendant suggest that the eastern boundary of the parcels is Blacksburg Road and that Blacksburg Road does not lie within the railroad right-of-way.  Thus, in the absence of any evidence in the record that the parcels associated with claims 82 and 83 include the railroad right-of-way or that Blacksburg Road is encompassed within the railroad right-of-way, plaintiffs have failed to establish that the second sentence of section 1-44.2(a) does not operate to deprive the owners of the parcels of any interest in the railroad right-of-way.

For claims 89a and 89b, the deed submitted by plaintiffs contains, as previously noted, metes-and-bounds descriptions of twenty separate tracts, and these descriptions rely almost entirely on landmarks (stones, trees, creeks, etc.), surrounding properties (identified by the owners' names), and unnamed or currently nonexistent roads to define the boundaries of each tract.  As also noted above, the only map in the record that depicts the boundaries of the parcels associated with claims 89a and 89b is plaintiffs' overview map, which indicates that the parcel associated with claim 89a is situated at the corner of Lavender Road and Blacksburg Road, and that one of the boundaries of the parcel associated with claim 89b is Blacksburg Road.  This map is not nearly detailed enough for the court to ascertain whether the any of the tracts described in the deed coincide with the parcels depicted on the map.  Furthermore, the overview map suggests that Blacksburg Road is situated between the parcels and the railroad right-of-way.  Thus, in the absence of any evidence in the record that the parcels associated with claims 89a and 89b include the railroad right-of-way,[41] or that Blacksburg Road is encompassed within the railroad right-of-way, plaintiffs have failed to establish that the second sentence of section 1-44.2(a) does not operate to deprive the owners of the parcels of any interest in the railroad right-of-way.

For claims 119a and 119b, the deed submitted by plaintiffs includes a (somewhat opaque) metes-and-bounds description of a single parcel.  Unfortunately, the sole map submitted by the

---

[40]  The court previously granted defendant's cross-motion as to claims 89a and 89b on different grounds.

[41]  As noted above, the deed's description of one of the tracts indicates that the tract runs along a railroad right-of-way for 950 feet, but plaintiffs' overview map suggests that the parcels associated with claims 89a and 89b run along the railroad right-of-way for less than 500 feet.

parties showing the location of the parcel is plaintiffs' overview map, which only allows for a very rough determination of the parcel's boundaries. From this map, it appears that the southern portion of the parcel may adjoin the railroad right-of-way with no intervening public road, and that the northern portion of the parcel is separated from the railroad right-of-way by Bettis Road. However, especially in light of the fact that the legal description of the parcel lacks any reference to the railroad right-of-way, the court cannot ascertain the extent to which Bettis Road is encompassed within the railroad right-of-way. In short, the evidence submitted by plaintiffs is insufficient to determine whether the southern portion of the parcel is adjacent to the railroad right-of-way, and whether Bettis Road is situated within the railroad right-of-way such that the second sentence of section 1-44.2(a) is inapplicable.

In sum, defendant is entitled to summary judgment as to claims 82, 83, 89a, 89b, 119a, and 119b.

### f. Plaintiffs Are Entitled to Summary Judgment as to Claims 62 and 94

For the final two claims that implicate an intervening public road, claims 62 and 94, the court concludes that plaintiffs have satisfied their burden of establishing that the pertinent parcels are adjacent to the railroad right-of-way. With respect claim 62, the associated deed indicates that the western boundary of the parcel is the center of Highway 180 (South Post Road), which is "50 feet from the center of the Southern Railway track[.]" Reply & Resp. Ex. 28. In other words, half of the intervening public road is situated within the railroad right-of-way. As explained in Nelson, the second sentence of section 1-44.2(a) applies only when a public road right-of-way adjoins an abandoned railroad easement. 436 S.E.2d at 124-25. The North Carolina Supreme Court strictly construed the term "adjoins" to mean that the two rights-of-way must be situated side by side. See id. at 125 ("We believe that the definition of 'adjoin' does not include a tract which . . . is included within the bounds of another tract. To adjoin, a tract must be 'close to or in contact,' 'next to' or 'touching.'"). Here, South Post Road and the railroad right-of-way are not situated side by side; rather, the two rights-of-way overlap. Thus, the second sentence of section 1-44.2(a) does not apply, and the owner of the parcel associated with claim 62 owns to the centerline of the railroad right-of-way.

With respect to claim 94, the associated deed indicates that the eastern boundary of the parcel is the "West edge of Broad Street, also referred to as the e[d]ge of South Railroad[.]" Plaintiffs aver that Broad Street is now known as Bettis Road at this location (in Earl, North Carolina), and the WebGIS map submitted by defendant suggests that the eastern boundary of the parcel associated with claim 94 is Bettis Road. In contrast, as noted above with respect to claims 97 and 99, the relevant ICC valuation map suggests that the "Broad Street" mentioned in the deed could be referring to either Bettis Road or Blacksburg Road. This lack of clarity regarding the deed's reference to Broad Street, however, is of no moment. If the reference to Broad Street means Bettis Road, then the owner of the parcel would own to the centerline of the railroad right-of-way because the road lies completely within the railroad right-of-way. And, if the reference to Broad Street in the deed means Blacksburg Road, then the owner of the parcel would own the entirety of the railroad right-of-way because the presumptions set forth in section 1-44.2(a) would be overcome by proof that the railroad right-of-way is completely within the boundaries of the parcel.

In sum, plaintiffs are entitled to summary judgment as to the threshold title issues as to claims 62 and 94.

### 3. Defendant Is Entitled to Summary Judgment as to Claims 21 and 50

The third and fourth subcategories of claims in which defendant challenges plaintiffs' assertion of a property interest in the land underlying the railroad right-of-way collectively include only two claims:

| Claim | Property Owner | Parcel Number |
|-------|----------------|---------------|
| 21 | Stephen Thompson Gheen | 2547104347 |
| 50 | Gaye L. Willis | 2545367307 |

With respect to claim 21, the relevant deed describes a 200-by-200-foot parcel bounded by West Warren Street to the north and South Morgan Street to the east.  The only map in the record that depicts the location of this parcel is plaintiffs' overview map, which indicates that the railroad right-of-way is adjacent and parallel to South Morgan Street.  However, the railroad right-of-way is marked on the map in such a way that obscures how South Morgan Street and the railroad right-of-way are situated with respect to each other.[42]  Thus, the court is unable to ascertain whether (1) the parcel at issue is immediately adjacent to the railroad right-of-way (implicating the first sentence of section 1-44.2(a)), (2) South Morgan Street is an intervening public road (implicating the second sentence of section 1-44.2(a)), or (3) South Morgan Street is situated within the railroad right-of-way (implicating <u>Nelson</u>).  In short, plaintiffs have not satisfied their burden of establishing that the owner of the parcel associated with claim 21 has a property interest in the railroad right-of-way.  The court therefore grants defendant's motion for summary judgment as to this claim.

With respect to claim 50, the relevant deed lacks a metes-and-bounds description of the parcel.  Rather, the parcel is described as "Lot #2 Block 'H' of map 4 WinterPark Subdivision." Third Am. Compl. Ex. 266 at 736.  The only map in the record depicting the location of this parcel is plaintiffs' overview map, which suggests that the parcel is adjacent to the railroad right-of-way (with no intervening parcel or public road).  However, there is no way for the court to determine that the parcel described in the deed is the same parcel depicted on the map.  In other words, plaintiffs have not satisfied their burden of establishing that the parcel associated with claim 50 is adjacent to the railroad right-of-way.  The court therefore grants defendant's motion for summary judgment as to this claim.

---

[42]  A WebGIS map submitted by defendant depicting an area north of the parcel at issue indicates that the railroad line is situated to the east of South Morgan Street, while a separate WebGIS map submitted by defendant depicting the area south of the parcel at issue indicates that the railroad line is situated to the west of South Morgan Street.

**F.  Summary Judgment Is Not Appropriate With Respect to the Seven Claims Not Addressed in the Parties' Motions**

Finally, the parties do not address the following seven claims in their summary judgment motions:[43]

| Claim | Property Owner | Parcel Number |
|---|---|---|
| 17b | James D. Ledbetter | (b) 2547115134 |
| 19 | Hil-Cri-Mor Hudson Rentals | 2547114054 |
| 24 | C.C. Dickson Co. | 2546185419 |
| 51 | Sheila P. and Les Ivie | 2545451806 |
| 56a | Tommy A. Swan and Anita P. Long on Behalf of | (a) 2545726295 |
| 56b | the Estate of Phyllis B. Patterson | (b) 2545726295 |
| 56c |  | (c) 2545726295 |

Accordingly, neither plaintiffs nor defendant is entitled to summary judgment on threshold title issues with respect to these claims.

## III.  CONCLUSION

As set forth in more detail above, the court **GRANTS** summary judgment to plaintiffs on the threshold title issues with respect to the following claims:

> 1, 11, 15a, 15b, 16 (in part), 25, 26, 28a, 28b, 29, 32a, 33a, 33b, 34a, 34b, 35a, 35b, 35c, 36, 38, 39, 40a, 40b, 42, 43a, 43b, 44, 45, 46a, 47, 48, 49a, 49b, 52, 53a, 53b, 54, 55, 62, 67, 69, 70, 72, 74, 75, 76, 77a, 77b, 78, 79, 80, 81, 84, 85, 86, 88a, 88b, 88c, 89c, 90, 92a, 92b, 92c, 94, 104, 106, 107, 108a, 108b, 108c, 111, 118, 120, 121, 122a, and 122b.

In addition, with respect to the following claims, the court **DENIES** summary judgment to both plaintiffs and defendant on the issue of whether the associated parcels are immediately adjacent to the railroad right-of-way (but, based on the parties' stipulations, **GRANTS** summary judgment to plaintiffs on the other three threshold title issues, namely, (1) the identified parcels correspond with property that was originally conveyed to create the railroad right-of-way described in the NITU; (2) the original conveyances were easements for railroad purposes; and (3) the identified plaintiffs owned their parcels on August 4, 2015, the date the Board issued the NITU):

---

[43]  The court notes that the parties stipulated that (1) for claims 56a, 56b, and 56c, the associated parcels correspond with property that was originally conveyed to create the railroad right-of-way described in the NITU; (2) for claims 51, 56a, 56b, and 56c, the original conveyances were easements for railroad purposes; (3) for claims 17b, 19, 51, 56a, 56b, and 56c, the associated parcels are immediately adjacent to the railroad right-of-way described in the NITU; and (4) for claims 17b, 19, 24, and 51, the identified plaintiffs owned their parcels on August 4, 2015, the date the Board issued the NITU.

2, 3, 13, 20a, 20b, 22, 23a, 23b, 27, 30a, 30b, 30c, 32b, 41, 58, 59, 60, 61a, 63, 64, 65, 66, 68, 71, 73 (the portion not affected by the intervening parcel), 87, 91, 93a, 93b, 95, 96, 97, 98a, 98b, 99, 100, 101a, 101b, 102a, 102b, 103, 105a, 105b, 109, 110, 112, 113, 114, 115, 116, and 117.

Next, the court **GRANTS** summary judgment to defendant with respect to the following claims:

16 (in part), 21, 50, 73 (the portion affected by the intervening parcel), 82, 83, 89a, 89b, 119a, and 119b.

The court therefore **DISMISSES** these claims **WITH PREJUDICE**.  Finally, the court **DENIES** summary judgment to both plaintiffs and defendant on all threshold title issues with respect to the following claims left unaddressed in the parties' summary judgment motions:

17b, 19, 24, 51, 56a, 56b, and 56c.

By **no later than Friday, July 13, 2018**, the parties shall file a joint status report suggesting further proceedings.

**IT IS SO ORDERED.**

s/ Margaret M. Sweeney
MARGARET M. SWEENEY
Judge